IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WENTAO LI, )
 )
      Plaintiff, )
 )
v. ) 1:20-cv-241 (LMB/TCB)
 )
JEFF Z. XU, et al., )
 )
      Defendants. )

## ORDER

In this civil action, plaintiff Wentao Li ("plaintiff" or "Li"),[1] an individual domiciled in China, alleges six Virginia state-law claims against defendants Jeff Xu ("Xu") and Aston Technologies, Inc. ("Aston") (collectively with Xu, "defendants"), an individual and entity domiciled in Virginia, respectively. Before the Court is Aston's Motion to Dismiss ("Motion"), which has been fully briefed and will be resolved on the papers submitted. For the following reasons, Aston's Motion will be denied.

The Complaint alleges that, in 2017, Xu "entered into talks with Li to form a company in the United States for the purpose of purchasing auto parts and car repair equipment from manufacturers in China and distributing those goods for sale in the United States." Complaint ¶ 6. In accordance with these talks, in March 2018, "Xu formed Aston as a stock corporation in the Commonwealth of Virginia."[2] Id. ¶ 7. Subsequently, "Xu offered Li a majority interest in Aston" and "further offered to appoint [Li] as . . . Chairman of the Board of Directors [of Aston], in exchange for a direct capital investment of $90,000." Id. ¶ 8. In June 2018, "Li agreed and

---

[1] Plaintiff is also known as "Terry Li." Complaint ¶ 1.

[2] Attached to the Complaint is a copy of a record of Aston's corporate formation, which indicates that Xu formed Aston on March 26, 2018. Complaint Ex. 1.

transferred $90,000 of his personal funds to Aston through an offshore company [he] own[s]" called "Gleegraf Co. Ltd." ("Gleegraf").[3] Id. ¶ 10.

The Complaint alleges that, in October 2018, Xu told Li that Li "was now the majority owner of Aston and Chairman of Aston's [B]oard of [D]irectors." Id. ¶ 11. Xu also gave Li "copies of business cards Xu prepared for [Aston] indicating [his] supposed position[]."[4] Id. ¶ 12. In May 2019, at Xu's request and "in his capacity as an owner and [Chairman of the Board of Directors] of Aston," Li "purchase[d] certain auto repair equipment from a supplier in China" and "ship[ped] the goods to Aston in Virginia so that Aston could sell the goods in the United States at a profit." Id. ¶ 13. Li spent a total of $88,382 "of his personal funds" to do so.[5] Id. ¶¶ 14–15. "All goods purchased and shipped by Li were received" in July 2019. Id. ¶ 16.

The Complaint alleges that, in November 2019, Li "personally travelled to Virginia to meet with Xu and inspect Aston's corporate and financial documents." Id. ¶ 19. "At that meeting, Xu denied that Li was ever an owner or [Chairman of the Board of Directors] of Aston," stated "that Aston was merely using Li as a supplier of goods," and "further stated that he never had any intention of giving Li any ownership interest in or position with Aston." Id. ¶ 21. "Li then requested . . . immediate[] reimburse[ment] [of] both the $90,000 initial

---

[3] Attached to the Complaint is a copy of a bank record which appears to indicate that Gleegraf transferred $90,000 to Aston on June 22, 2018, although the record is difficult to read. Complaint Ex. 2.

[4] Attached to the Complaint are copies of two business cards; one identifies "Terry Li" as "Founder & Chairman" of Aston, and the other identifies "Terry Li" as "Chairman of the Board" of Aston. Id.

[5] Attached to the Complaint are copies of two invoices which indicate that Gleegraf bought various pieces of auto repair equipment from Lianong TomTop International Trading Co. on May 24, 2019 and May 27, 2019. Complaint Ex. 4–5.

investment [he] made in [Aston] and the costs associated with [his] purchase and shipment of goods." Id. ¶ 22. Xu "refused to compensate or reimburse Li in any amount." Id. ¶¶ 23–24.

On March 3, 2020, Li filed this civil action, alleging six Virginia state-law claims against both Xu and Aston in connection with the money he spent to acquire an ownership interest in Aston and to purchase and ship goods on Aston's behalf. Counts 1–6 respectively allege actual or constructive fraud (Count 1); civil securities liability under Va. Code Ann. § 13.1-522 (Count 2); conversion (Count 3); fraud in the inducement (Count 4); breach of contract (Count 5); and unjust enrichment (Count 6). Li seeks $189,278.15 in compensatory damages, $350,000 in punitive damages, and attorneys' fees and costs. As relevant here, the Complaint states that "[a]ll allegations plead herein against Xu are plead equally and identically against Aston, and vice versa," and that "Xu formed Aston with the intent and for the purpose of committing a fraud upon Li." Id. ¶¶ 25–26.

On April 29, 2020, Aston filed the pending Motion, in which it raises one argument under Federal Rule of Civil Procedure 12(b)(1) and two arguments under Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 12(b)(1), "a civil action must be dismissed whenever the court lacks subject matter jurisdiction." Al Shimari v. CACI Premier Tech., Inc., 320 F. Supp. 3d 781, 782 (E.D. Va. 2018). Under Federal Rule of Civil Procedure 12(b)(6), a civil action "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). Each of Aston's arguments will be addressed in turn.

First, Aston argues that Li "lacks standing to bring suit" because, although he alleges that he spent his "personal funds," the funds spent actually came from Gleegraf, and Li "fail[s] to allege any facts . . . as to why he is entitled to recover in his own name money that was paid by

Gleegraf." Memorandum in Support at 5. In response, Li argues that "the Complaint is unequivocal that [he] used his own personal funds to provide money and goods to Aston," and that Gleegraf, which is "his company," was an "intermediary" whose "role in the transactions was mechanical." Memorandum in Opposition at 2–3. At this early stage of the litigation, Li has the better argument.

"A defendant may challenge subject matter jurisdiction in one of two ways." 24th Senatorial Dist. Republican Comm. v. Alcorn, 820 F.3d 624, 629 (4th Cir. 2016). "First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Id. "Alternatively, the defendant may contend that the jurisdictional allegations [in] the complaint [are] not true." Id. "In the second scenario, a trial court may then go beyond the allegations [in] the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations." Id. "There is no presumption of truth and the court weighs the evidence presented." Id. "If, however, the jurisdictional facts are intertwined with the facts central to the merits of the complaint, a presumption of truthfulness should attach to the plaintiff's allegations" and "the court should resolve the factual disputes only after appropriate discovery." Id. "In that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Accordingly, "[a] trial court should . . . afford the plaintiff the procedural protections—such as discovery—that would apply were the plaintiff facing a direct attack on the merits," and "should dismiss under Rule 12(b)(1) only when" the jurisdictional allegations are "clearly immaterial," "made solely for the purpose of obtaining jurisdiction," or "wholly unsubstantial and frivolous." Id.

"The merits of the claim and [the] disputed jurisdictional facts need not be identical" for discovery to be appropriate; rather, it is sufficient that they are "so closely related that the jurisdictional issue is not suited for resolution in the context of a motion to dismiss." Suh v. HCA-The Healthcare Co., 2009 WL 1834596, at *3 (E.D.N.C. June 23, 2009). "Stated differently, where a factual attack on the [court's] subject matter jurisdiction implicates an element of the cause of action, it is an attack on the merits of the case" such that discovery is appropriate. Id.; see also Hunter Structural, P.A. v. Arp Eng'g, Inc., 2018 WL 662367, at *4 (W.D.N.C. Feb. 1, 2018); Corrado v. Life Inv'rs Owners Participation Tr. & Plan, 2009 WL 3062320, at *4 (D. Md. Sept. 21, 2009); Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 551 (E.D. Va. 2009) (explaining that "jurisdictional issue[s] and substantive issues" are "intertwined" when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits" of the plaintiff's claim). In that situation, "the jurisdictional question simply cannot be resolved on the limited record before the court." Corrado, 2009 WL 3062320, at *4.

Here, Aston "contend[s] that the jurisdictional allegations [in] the complaint [are] not true." 24th Senatorial Dist., 820 F.3d at 629. Specifically, Aston contends that although Li alleges that the funds spent to acquire an ownership interest in Aston and to purchase and ship goods on Aston's behalf were "his personal funds," he also alleges that the funds were "transferred . . . through . . . Gleegraf," and the invoice copies submitted with the Complaint suggest that the latter funds came from Gleegraf as well. See Complaint ¶¶ 10, 14–15, Ex. 4–5. As a result Aston argues that Li has not suffered an injury in fact and lacks standing to bring suit. This argument may ultimately be persuasive; however, the jurisdictional question of whose funds were spent to acquire an ownership interest in Aston and to purchase and ship goods on Aston's behalf "implicates" elements of Li's claims, such as whether he suffered any damages caused by

Xu's or Aston's conduct. Suh, 2009 WL 1834596, at *3. Therefore, "this question simply cannot be resolved on the limited record before the court," and discovery is appropriate. Corrado, 2009 WL 3062320, at *4. Indeed, several courts have permitted discovery in similar circumstances. See, e.g., Franklin v. Jackson, 2015 WL 1186599, at *10 (D. Md. Mar. 3, 2015); Roberts v. UXB Int'l, Inc., 2014 WL 4187335, at *3 (W.D. Va. Aug. 22, 2014); see also Noble, 611 F. Supp. 2d at 551. There is also no indication that the jurisdictional allegations are "clearly immaterial," "made solely for the purpose of obtaining jurisdiction," or "wholly unsubstantial and frivolous." Kerns, 585 F.3d at 193. Accordingly, Aston's Motion will be denied without prejudice as to this argument, and Aston "will be permitted to renew its motion should additional information come to light during discovery that casts doubt on [Li's] right to sue on the underlying claims."[6] Roberts, 2014 WL 4187335, at *3.

Second, Aston argues that Li "fails to state a claim against Aston" because he "fails to actually allege any facts specifically against Aston," and instead "seeks to make [Aston] equally liable [to Xu] with one threadbare, conclusory statement"—that "[a]ll allegations plead herein against Xu are plead equally and identically against Aston, and vice versa." Memorandum in Support at 6; Complaint ¶ 25. In response, Li argues that "Aston is an inextricable player in [the] scheme to fraudulently obtain from [him] startup capital and free product to sell," and that "[t]he facts as pled show that Aston itself possesses the ill-gotten money and goods[] and continues to

---

[6] The jurisdictional question of whose funds were spent to acquire an ownership interest in Aston and to purchase and ship goods on Aston's behalf is also not "purely a legal question that can be readily resolved in the absence of discovery." 24th Senatorial Dist., 820 F.3d at 629. For example, although an individual's right to sue on behalf of an entity may be partly a legal question, Gleegraf appears to be an offshore company, and there is no information in the record regarding its formation or structure.

6

use [his] property for the benefit of its business." Memorandum in Opposition at 4. Li has the better argument.

Aston is specifically referenced at least 15 times in the Complaint's general factual allegations. See, e.g., Complaint ¶¶ 7–8, 10–13, 17–27. These references include actions attributed to Aston, such as Aston's "refus[al] to compensate or reimburse Li in any amount." Id. ¶ 23. Therefore, Aston's assertion that Li "fails to allege any facts specifically against Aston" is belied by the Complaint. Aston's contention that the Complaint impermissibly equates Aston, a company, with Xu, its founder, is also without merit because "Virginia recognizes that a corporation" or similar entity "can act only through its officers and agents." Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 532 (4th Cir. 2015). Moreover, the Complaint alleges that "Xu formed Aston with the intent and for the purpose of committing a fraud upon [him]," which suggests that Li may be proceeding on a theory of alter-ego liability that would render Xu and Aston "effectively the same entity." Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 392 (4th Cir. 2018). Although the Complaint's statement that "[a]ll allegations plead herein against Xu are plead equally and identically against Aston, and vice versa," may result in some odd allegations, Complaint ¶ 25, that is not a basis on which to dismiss the Complaint.

Third, Aston argues that Li "fails to state a claim for fraud and fraud in the inducement" because both causes of action require an intentional misrepresentation and Li "alleg[es] that the misrepresentations could have been made [intentionally or] negligently." Memorandum in Support at 6–7. In response, Li argues that "the [Federal] Rules [of Civil Procedure] allow for [such] pleading . . . in the alternative." Memorandum in Opposition at 5. Li has the better argument.

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones," and "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Here, Count 1 alleges fraud or constructive fraud based on defendants' "intentional[] or negligent[] misrepresent[ations]" to Li, respectively. Complaint ¶¶ 28–29. This method of pleading is not improper because "[c]ourts have interpreted Rule 8(d)(2) to allow a plaintiff to plead separate causes of action in a single count of the complaint." Smith v. Computer Task Grp., Inc., 568 F. Supp. 2d 603, 612 (M.D.N.C. 2008). Additionally, Count 4 alleges fraud in the inducement based on defendants' "intentional[] or negligent[] misrepresent[ations]" to Li. Complaint ¶¶ 42–43. This method of pleading is not improper because, "pursuant to Rule 8(d)(2)," dismissal where "there exist[] inconsistent statements in the Complaint" is "inappropriate" as long as one statement "is sufficient" to state a claim. Purcell v. City of Greensboro, 2012 WL 1718763, at *3 n.1 (M.D.N.C. May 14, 2012). For these reasons, it is hereby

ORDERED that Aston's Motion to Dismiss [Dkt. 18] be and is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 5 day of June, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge